UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEFFREY KENNEY,

Petitioner,

vs.                                              CASE NO. 8:12-cv-1339-T-27MAP
                                              CRIM. CASE NO. 8:10-cr-431-T-27MAP

UNITED STATES OF AMERICA,

Respondent.
_____/

## O R D E R

**BEFORE THE COURT** are Petitioner's Motion to Vacate, Set Aside, or Correct Sentence

pursuant to 28 U.S.C. § 2255 (CV Dkt. 1), and the Government's Response (CV Dkt. 7).[1]  Upon

review, Petitioner's motion is DENIED.

### Procedural Background

An indictment charged Petitioner with one count of conspiracy to possess with intent to

distribute and to distribute a quantity of a mixture and substance containing a detectable amount of

Oxycodone, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846.  On March 7, 2011,

Petitioner pleaded guilty pursuant to a written plea agreement. (CR Dkt. 72).  On June 13, 2011,

Petitioner was sentenced to one hundred twenty (120) months imprisonment to be followed by three

years of supervised release (CR Dkt. 100).  Petitioner did not appeal his conviction or sentence.

Petitioner signed his Section 2255 motion on June 11, 2012.  The Government does not

challenge the timeliness of the motion.  Petitioner presents two grounds for relief:

---

[1] Although afforded the opportunity, Petitioner did not file a reply to the Government's response.

**Ground One:** Trial counsel rendered ineffective assistance by misadvising Petitioner about his sentence; and

**Ground Two:** Trial counsel rendered ineffective assistance by not appealing Petitioner's sentence or moving to correct Petitioner's sentence

## Discussion

Petitioner's written plea agreement includes an express waiver of his right to appeal or collaterally attack his sentence.[2] An appeal waiver in a plea agreement is enforceable if the waiver is made knowingly and voluntarily. *United States v. Weaver*, 275 F.3d 1320, 1333 (11th Cir. 2001); *United States v. Bushert*, 997 F.2d 1343, 1350-51 (11th Cir. 1993). An appeal waiver will be enforced if the Government demonstrates either: (1) that the district court specifically questioned the defendant about the waiver during the plea colloquy, or (2) that the record clearly shows that the defendant otherwise understood the full significance of the waiver. *Williams v. United States*, 396 F.3d 1340, 1341 (11th Cir. 2005); *United States v. Buchanan*, 131 F.3d 1005, 1008 (11th Cir. 1997). A knowing and voluntary appeal waiver precludes a defendant from collaterally attacking his conviction in a Section 2255 motion. *Williams*, 396 F.3d at 1342.

During the plea colloquy Petitioner specifically averred that he understood the consequences

---

[2] The appeal waiver states:

> The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence or to challenge it collaterally on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

(CR Dkt. 70, p. 12) (emphasis in original).

of the appeal waiver, including the provision barring a collateral attack:

COURT:               Ordinarily, Mr. Kenney, you would have a right to appeal your sentence or to challenge your sentence in court. What this paragraph [stating the appeal waiver] does, it limits your rights in that regard and now you can only complain about your sentence for the grounds listed in this paragraph. That's either a direct appeal to the court of appeals in Atlanta or in what's called a "collateral attack," which would be a petition filed in this court, the district court.

And the grounds that you can raise are specifically listed here, as I said: (a) that the sentence exceeds your applicable guidelines range as determined by the court pursuant to the guidelines; (b) the ground the sentence exceeds the statutory maximum penalty, which I reviewed with you a moment ago - - up to 20 years imprisonment, a million dollar fine, term of supervised release of at least three years, forfeiture, restitution. So, it would have to be something more than that - - or (c) the ground that the sentence violates the Eighth Amendment to the Constitution of the United States. That is an amendment that prohibits cruel and unusual punishment. However, if you - - if the Government appeals, then you could appeal.

Do you understand this paragraph as I have explained it to you?

DEFENDANT:           Yes, I do.

COURT:               Has anybody promised you anything to get you to waive your rights other than the promises in your plea agreement?

DEFENDANT:           No, Your Honor.

. . . .

COURT:               . . . . Do you understand what you are charged with and the elements of the crime?

DEFENDANT:           Yes, I do.

COURT:               And how do you plead, sir? Guilty or not guilty?

DEFENDANT:  Guilty.

COURT:  Your plea agreement includes a factual basis, which begins on page 14; and I note there's some changes in the facts that are written in handwriting. Are those facts as corrected true and correct as they apply to you?

DEFENDANT:  Yes, they are.

COURT:  Did you agree with others to possess with intent to distribute Oxycodone as charged?

DEFENDANT:  Yes, I did.

COURT:  Did you do this knowingly and willfully?

DEFENDANT:  Yes, I did.

COURT:  May I ask your counsel, first, have there been any other promises or assurances given to Mr. Kenney other than those in the plea agreement?

[COUNSEL]:  No, Your Honor.

COURT:  Are you satisfied that he's entering his plea this afternoon knowingly and voluntarily with a full understanding of the consequences?

[COUNSEL]:  Yes, Your Honor.

COURT:  And to government counsel, have there been any promises or assurances given?

[PROSECUTOR]:  None that I'm aware of; but as you know, I'm standing in for [another prosecutor]. If there would be any between her, she didn't tell me.

. . . .

COURT:  Mr. Kenney, do you have any questions about what's occurred here today?

DEFENDANT:  No, Your Honor.

4

COURT:          It is the finding of the court that you are fully competent and capable of entering an informed plea and that your plea of guilty is knowingly and voluntarily made; and in my report to Judge Whittemore, I will recommend that your plea be accepted, that you be adjudged guilty, and that sentence be imposed accordingly.

(CR Dkt. 109, pp. 13-18). The record supports the finding that Petitioner entered a knowing and voluntary guilty plea.[3] The record also shows that the district court specifically questioned Petitioner about the appeal waiver. Consequently, the appeal waiver in Petitioner's plea agreement is enforceable. *Williams*, 396 F.3d at 341.

**Ground One**

Petitioner contends that his criminal history in the presentence investigation report ("PSR") should have been designated as a category one rather than a category III.[4] Petitioner argues that his trial counsel "was ineffective for failing to know the law, for failing to investigate and explore defenses, for failing to know the sentencing guidelines, for failing to know Federal R[ule] of Criminal Procedure 32,[5] and for affirmatively misadvising [Petitioner] as to the sentence [he] would receive if [he] plead guilty rather than proceeding to trial." (CV Dkt. 1, p. 4). Petitioner claims that,

---

[3] The record shows that the magistrate judge in the remainder of the plea colloquy discussed with Petitioner the nature and elements of the charged offense, the factual basis for the charge, the rights he forfeited by pleading guilty, and the possible sentence (including imprisonment) that he faced upon conviction. (CR Dkt. 109, pp. 6-17). *See Finch v. Vaughan*, 67 F.3d 909, 914 (11th Cir. 1995) ("For a guilty plea to be entered knowingly and intelligently, the defendant must have not only the mental competence to understand and appreciate the nature and consequences of his plea but he also must be reasonably informed of the nature of the charges against him, the factual basis underlying those charges, and the legal options and alternatives that are available."). *See also United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005) ("A court accepting a guilty plea must comply with Rule 11 and specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea.").

[4] The PSR indicates that Petitioner's prior convictions (*see* PSR ¶47) resulted in a sub-total criminal history score of 2. (PSR ¶48). Because Petitioner committed his underlying criminal offense while on probation, two points were added to his criminal history score pursuant to U.S.S.G. § 4A1.1(d) for a total of 4 criminal history points which resulted in a criminal history category III. (PSR ¶¶ 49, 50).

[5] Fed. R. Crim. P. 32 addresses sentencing and judgment in a federal criminal case.

absent counsel's errors, he would have foregone a plea and proceeded to trial.

A voluntary and intelligent guilty plea forecloses federal collateral review of alleged constitutional errors preceding the entry of the plea. *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973); *Wilson v. United States*, 962 F.2d 996 (11th Cir. 1992). Petitioner's ground alleges ineffective assistance rendered before entry of his guilty plea. Petitioner's knowing and voluntary plea waived this antecedent non-jurisdictional ground because the ground does not implicate the validity of the plea.[6] *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000), *cert. denied*, 531 U.S. 919 (2000).

Notwithstanding, even if this ground was not waived by entry of Petitioner's voluntary plea, his written plea agreement includes a valid express waiver of his right to collaterally attack his sentence. (CR Dkt. 70, p. 12). Petitioner averred under oath that he understood both the waiver and the limited circumstances in which he could appeal his sentence, and that he agreed to the waiver freely and voluntarily as part of his plea agreement. (CR Doc. 109, pp. 13-14). Petitioner does not claim, and the court does not find, that any of the exceptions specified in the waiver apply to permit collateral review of ground one. Consequently, ground one is barred from federal review in this Section 2255 motion.[7]

---

[6] Petitioner does not challenge the validity of either his guilty plea or the appeal waiver in his plea agreement, challenges which would not be barred by the waiver. *See, e.g., Patel v. United States*, 252 Fed. App'x 970, 974 (11th Cir. 2007) (an appeal waiver does not bar a § 2255 claim that either the defendant's plea or the appeal waiver itself is invalid due to ineffective assistance of counsel); *United States v. White*, 307 F.3d 336, 341 (5th Cir. 2002) (indicating that "a waiver of appeal may not be enforced against a section 2255 petitioner who claims that ineffective assistance of counsel rendered *that waiver* unknowing or involuntary") (emphasis in original); *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001) (holding that "a plea agreement waiver of post-conviction rights doesnot waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea or the waiver").

[7] Even if review of ground one was not barred by either the guilty plea or the appeal waiver, Petitioner cannot obtain relief on the merits. In his motion to vacate Petitioner does not describe how counsel "failed to know" the law,

(continued...)

**Ground Two**

Petitioner argues that in his PSR "the same conduct was [improperly] used to increase the criminal history category and determine the base offense level."[8] (CV Dkt. 1, p. 5). Petitioner

---

[7](...continued)

sentencing guidelines, or a particular rule of criminal procedure. He likewise does not suggest what defenses counsel "failed to explore" or what facts or witnesses counsel failed to investigate. Other than stating that counsel "told [him] the ceiling was seven years," (CV Dkt. 1, p. 4), Petitioner does not further explain how counsel misadvised him about his potential sentence. Because Petitioner fails to provide a factual basis or evidentiary support for the allegations in ground one, he cannot establish entitlement to relief. *See Hill v. Lockhart*, 474 U.S. 52 (1985) (conclusory allegations of ineffective assistance of counsel are insufficient to raise a constitutional issue); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).

[8] Petitioner did not file a memorandum of law in support of his motion to vacate. Petitioner does not explain in his motion what "same conduct" was allegedly improperly used in calculating his criminal history category. The PSR shows that Petitioner received two points toward the calculation of his criminal history category based upon a probation violation in prior a case and possession of a firearm. (PSR ¶¶33, 34, 47). Counsel argued at the sentencing hearing that this conduct should not be "double counted" in determining Petitioner's criminal history category as follows:

> This is in relation to how the injunction violation has been preliminarily scored under 4A1.1. Typically, a probation-only sentence only gets one point scored. In this case, two points were scored. And the reason why was because in the presentence investigation, they - - the probation officer also considered the VOP adjudication that was entered on 12/21 of 2010 where he admitted to the new law charge, which also involved the firearms situation, and took what was ultimately a time-served sentence. It was four months county jail.
>
> However, the VOP was based on the August 24th, 2010 search which actually resulted in this case. And the firearm that was discovered was actually included in a two-level bump for Mr. Kenney previously in the guidelines and is, obviously, relevant conduct.
>
> Our position is, is that under the guidelines themselves that, when we score for criminal history, we're not supposed to include sentences that are part of relevant conduct.
>
> Now, what makes this one rather unique is that it's a sentence within a sentence. It's not necessarily the baseline sentence that we're objecting to at this particular point. It's the VOP because the VOP adds one more point because it involved 60 days or more of an incarceration sanction, which raised this from a one-point offense to a two-point offense.
>
> Our position is, is that because the firearm was considered relevant conduct, and he's already gotten a two-level offense bump because of it, it should not be counted here, and he should only get one point under 4A1.1, I believe it's A, for the violation of injunction offense.
>
> If we do that, the one plus the two points for the legal status violation, he would then only score three criminal history points, which would put him in Roman Numeral category II instead of III, which it's a major difference for my client. It's the difference in this case, assuming if we - - well, with the current guidelines as they stand, without considering the 5K at all, it's currently a difference of about 17 months right there.

(continued...)

contends that his trial counsel rendered ineffective assistance "because he did not appeal the sentence or move to correct the sentence." (CV Dkt. 1, p. 5). Petitioner claims that, if counsel had either moved to correct the sentence or appealed the sentence, he "would have received a new sentencing" based upon the Eleventh Circuit's holding in *United States v. Hunerlach*, 258 F.3d 1282 (11th Cir. 2001).[9] (CV Dkt. 1, p. 5).

To the extent Petitioner challenges trial counsel's failure to move to correct the sentence, Petitioner cannot obtain relief. As in ground one, *supra*, Petitioner's valid express waiver of his right to collaterally attack his sentence prevents review of this portion of ground two. *See Williams*, 396 F.3d at 1342 (An appeal waiver is enforceable against a claim of ineffective assistance of counsel at sentencing because "a contrary result would permit a defendant to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless.").

To the extent Petitioner argues that his counsel rendered ineffective assistance "because he did not appeal the sentence," (CV Dkt. 1, p. 5), he likewise cannot obtain relief.[10] *Strickland v. Washington*, 466 U.S. 668 (1984), governs the analysis of an ineffective assistance of counsel claim:

---

[8](...continued)
And considering he's already gotten a bump for the firearm, which, you know, he's accepting the bump for that, we don't want him getting bumped twice for the same thing.

(CR Dkt. 111, pp. 7-9). Affording Petitioner a liberal construction of his motion to vacate (and because Petitioner does not argue otherwise), the court presumes that he faults counsel for not arguing on appeal or in a motion to correct sentence the same "double counting" argument that counsel unsuccessfully made at the sentencing hearing.

[9] *Hunerlach*, 258 F.3d at 1282, holds, in relevant part, that a district court cannot depart upward from a criminal history category based on criminal conduct which also constituted relevant conduct that the district court had already considered in calculating the base offense level for the offense of conviction.

[10] The appeal waiver in Petitioner's plea agreement does not prevent him from filing a Section 2255 motion to challenge counsel's failure to file a notice of appeal. *Gomez-Diaz v. United States*, 433 F.3d 788, 793-95 (11th Cir. 2005).

According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998). *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), holds that *Strickland* governs an ineffective assistance of counsel claim based upon counsel's failure to file a notice of appeal on a petitioner's behalf. To evaluate such a claim, a court must first establish whether the petitioner specifically requested counsel to file a notice of appeal. If such a request was made but disregarded by counsel, the first prong of the *Strickland* test (deficient performance) is met. *See Gomez-Diaz v. United States*, 433 F.3d 788, 791-92 (11th Cir. 2005) ("[A]n attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner *per se.*") (citing *Flores-Ortega*, 528 U.S. at 477). In such a case, prejudice is presumed and the petitioner is entitled to a new appeal without any further showing. *Flores-Ortega*, 528 U.S. at 583. If, however, a petitioner neither specifically instructs counsel to file an appeal nor asks that an appeal not be taken, a court must determine whether counsel "consulted"[11] with the petitioner about an appeal. "If counsel has consulted with the [petitioner] . . . then [c]ounsel performs in a professionally unreasonable manner only by failing to follow the [petitioner]'s express instructions with respect to an appeal."[12] *Id.* at 488. Conversely,

---

[11] The Supreme Court defines the word "consult" as "advising the [petitioner] about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the [petitioner]'s wishes." *Flores-Ortega*, 528 U.S. at 478.

[12] To satisfy *Strickland's* prejudice prong, "a defendant who shows that his attorney has ignored his wishes and failed to appeal his case need only demonstrate that, but for the attorney's deficient performance, he would have appealed." *Gomez-Diaz*, 433 F.3d at 792.

if counsel did not consult the petitioner, a court "must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the petitioner itself constitutes deficient performance." *Id.* at 480. *See also Thompson v. United States*, 504 F.3d 1203, 1206 (11th Cir. 2007) ("[W]here a [petitioner] has not specifically instructed his attorney to file an appeal, [a court] must still determine 'whether counsel in fact consulted with the [petitioner] about an appeal.'") (quoting *Flores-Ortega*, 528 U.S. at 478). Counsel has a constitutionally imposed duty to "consult with the [petitioner] about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular [petitioner] reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega.* at 480.

Petitioner in his motion to vacate states only that counsel "did not appeal the sentence."[13] (CV Dkt. 1, p. 5). The respondent correctly argues that Petitioner "does not state that he *ever* directed his counsel to file an appeal." (CV Dkt. 7, p. 12) (emphasis in original). In an unrebutted affidavit addressing Petitioner's grounds of ineffective assistance of counsel, Petitioner's former counsel avers (1) that he and Petitioner discussed Petitioner's appellate rights and that Petitioner "agreed that he did not wish to file a notice of appeal,"[14] (2) that he informed Petitioner that he would

---

[13] Petitioner did not file a supporting memorandum of law, an affidavit, or a reply to the response setting forth a factual basis for ground two.

[14] Counsel avers in his affidavit:

13. While [Petitioner] was not entitled to a "double counting" argument as a matter of law, it could still be raised at sentencing as an over-representation argument, which is exactly what happened. On several occasions I met with [Petitioner] to discuss the presentence memorandum and the sentencing proceedings in general. As part of those discussions, I discussed with him his appellate rights. Since he signed a plea agreement with an appellate waiver, I informed him that the Eleventh Circuit generally enforces appellate waivers and that, short of being sentenced in violation of the appellate waiver (rare), any attempt to appeal would be swiftly dismissed by the Eleventh Circuit upon motion

(continued...)

not be filing a notice of appeal,[15] and (3) that Petitioner "never changed his mind [after the

sentencing hearing about wanting to file an appeal]."[16]

---

[14](...continued)
of the Government. While I informed him that he could still file a notice of appeal despite his waiver, I predicted the Government would swiftly respond with a motion to dismiss based upon the appellate waiver and that motion would eventually be granted.

14. At that point, I asked [Petitioner] whether or not he still wanted me to file a notice of appeal. He agreed that he did not wish to file a notice of appeal so long as he received a guidelines sentence from the Court at sentencing based upon the Court's calculations of the guidelines. . . . [Petitioner] understood and acknowledged that, due to his plea waiver, if the Court did not agree with our arguments, any argument to the Eleventh Circuit would be subject to dismissal upon motion by the Government. I firmly believe the near certainty that any appeal taken would be dismissed upon motion by the Government based upon the plea waiver was at least one of the factors guiding [Petitioner]'s decision to waive the filing of a notice of appeal.

(CV Dkt. 7, affidavit of Christopher A. Desrochers, Esq., pp. 10-11).

[15] Counsel avers in his affidavit:

15. I informed [Petitioner] that, based upon his statements to me, I would not be filing a notice of appeal. However, he always had the right to change his mind, but if he did so, he had to at least call me collect from the jail a day or two before his appellate rights expired to let me know that he had changed his mind. At the sentencing hearing I reminded him again that he had a right to at least file a notice of appeal and [Petitioner] indicated that he did not wish to file a notice of appeal. Once again, I reminded him that he could change his mind but he had to call me collect if he did change his mind. Eventually, I also did this on the record. ([CV] D[kt]. 111 at 34). [Petitioner] was present when I went on the record. As evidenced by the record of the sentencing proceedings, [Petitioner] made no comment or objection nor did he point out that I was incorrect in any way or otherwise speaking out of turn. In addition, the Court pointed out that, if for any reason [Petitioner] could not reach me, that he should contact the clerk's office if he changed his mind. ([CV] D[kt]. 111 at 35).

16. The time for filing a notice of appeal came and went and I did not hear from [Petitioner] either by telephone or by letter. To the best of my knowledge and belief, he never changed his mind and, as a result, I did not file a notice of appeal.

(CV Dkt. 7, affidavit of Christopher A. Desrochers, Esq., pp. 11-12).

[16] Counsel at the conclusion of the sentencing hearing specifically apprised the court that he had discussed with Petitioner his appellate rights:

COURT:    Let me, then, at least to the extent permitted by your plea agreement, advise you, Mr. Kenney, you have 14 days to appeal. That is your decision, not your attorney's. So discuss it with him sometime other than in this courtroom. Make sure you understand the advantages and disadvantages.

If you choose to appeal, he'll file it for you. You're entitled to be represented by an attorney. If you're not able to pay one, one will be appointed to represent you

(continued...)

Petitioner does not challenge either counsel's sworn statements in his affidavit or counsel's representation at the sentencing hearing that Petitioner told counsel that he did not wish to pursue an appeal. Consequently, no factual dispute exists as to whether Petitioner instructed counsel to file a notice of appeal or that counsel ignored any such an instruction. Under this circumstance, counsel's failure to file a notice of appeal does not fall under the *per se* definition of ineffective assistance of counsel announced in *Flores-Ortega. See Flores-Ortega,* 528 U.S. at 477.

Moreover, even if Petitioner did not make a specific request of counsel to file a notice of appeal, the facts of this case weigh against finding that counsel nonetheless had a constitutionally imposed duty to consult Petitioner about his desire to file an appeal. *Flores-Ortega,* 528 U.S. at 480. A rational defendant in Petitioner's position would not have wanted to appeal because (1) the

---

[16](...continued)

    free of charge. And the clerk will accept your appeal without payment of the filing fee.

    One of the considerations - - and I don't know if there's possibility of a Rule 35 or not, that is a consideration in deciding whether to appeal. But [counsel] will go over that with you. And ultimately, make sure you tell him what you want to do within 14 days.

    Is there anything else, [from either counsel]?

. . . .

[COUNSEL]:   Your Honor, for the record, I've actually discussed with him concerning his appellate rights and the Rule 35 implications. And he currently has indicated that he does not wish to take an appeal. But I've told him, he's got 14 days to take an appeal. So if he changes his mind, he needs to give me a call.

COURT:   Al[right]. Well, make sure he just remembers, 14 days from when I sign this judgment. That will be tomorrow morning, probably. If your mind changes, contact [counsel].

    If you're not able to call him or contact him, notify the clerk.

(CR Dkt. 111, pp. 33-35). Petitioner did not object at the sentencing hearing to counsel's representations to the court and he does not argue in his pleadings that he disagreed with counsel's statement that Petitioner did not wish to take an appeal. Petitioner's silence on this issue at sentencing would not have either alerted counsel that Petitioner wanted to appeal or triggered counsel's duty to consult with Petitioner about an appeal. *Flores-Ortega,* 528 U.S. at 480.

valid guilty plea waived a challenge to a non-jurisdictional defect in the proceedings, (2), the valid

appeal waiver foreclosed a challenge to most matters on appeal including Petitioner's underlying

challenge to his criminal history category, (3) the "double counting" argument does not fall within

any of the exceptions to the appeal waiver as specified in the plea agreement, and (4) Petitioner

received substantial benefits as a result of pleading guilty.[17] *See Flores-Ortega*, 528 U.S. at 486.[18]

Furthermore, the record does not show, and Petitioner does not argue, that he was interested in

appealing. *Id.* Consequently, even assuming that Petitioner did not make a specific request of

counsel to file a notice of appeal, Petitioner fails to establish that counsel had a duty to consult with

him about an appeal. Based on the foregoing, the court finds the Petitioner has not established either

that he requested that counsel file an appeal on his behalf or that counsel was otherwise

constitutionally ineffective for failing to file an appeal in Petitioner's criminal case.

Even assuming that Petitioner were entitled to an out of time appeal on ground two, he would

not be entitled to relief. The PSR shows that Petitioner received two points toward his total offense

level for possession of a firearm recovered during an August 24, 2010, search of Petitioner's

residence which resulted in his arrest on state charges. (PSR ¶¶22, 25, 34). Petitioner also received

---

[17] Such benefits include, *inter alia*, a three-level reduction for his substantial assistance and a sentence (120 months) that includes a one-month variance below the advisory guidelines range. (PSR ¶¶ 39, 40; CR Dkt. 111, pp. 5, 32).

[18] The Supreme Court describes factors for consideration in determining whether a reasonable defendant would have wanted to appeal:

> Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights.

*Flores-Ortega*, 528 U.S. at 480.

two points in the calculation of his criminal history for a violation of a state injunction that resulted

in a violation of probation based on his August 24, 2010, arrest. (PSR ¶47). At sentencing,

counsel's argument that the two points for the violation of the injunction/probation resulted in

"double counting" was rejected. (CR Dkt. 111, pp. 24-25).

"Impermissible double-counting occurs 'when one part of the Guidelines is applied to

increase a defendant's punishment on account of a kind of harm that has already been fully

accounted for by application of another part of the Guidelines.'" *United States v. Pruitt*, 344 Fed.

App'x 542, 537 (11th Cir. 2009) (quoting *United States v. Phillips*, 363 F.3d 1167, 1168 (11th Cir.

2004)). In *Pruitt*, the Eleventh Circuit held that it was not impermissible double counting to award

Pruitt criminal history points for both committing the federal offense of conviction (bank robbery)

while on state probation and for the state sentence imposed upon the revocation of probation:

> Here, there was no double-counting because these two sets of criminal history points
> were awarded for distinct reasons. Pruitt received two criminal history points for
> committing the instant bank robbery offense while on state probation. *See* U.S.S.G.
> § 4A1.1(d) (instructing the district court to "[a]dd 2 points if the defendant
> committed the instant offense while under any criminal justice sentence, including
> probation"). Pruitt received three criminal history points for the January 2008
> sentence of three years' imprisonment that was imposed upon revocation of his
> probation. *See* U.S.S.G. § 4A1.1(a). The PSI addendum, which the district court
> adopted, stated that: (1) the state probation revocation order indicated that Pruitt's
> probation was revoked based only on the technical violations listed in the February
> 2007 probation warrant; and (2) South Carolina probation officials confirmed that
> Pruitt's October 2007 bank robbery did not serve as a basis for the probation
> revocation. In any event, as also noted in the PSI addendum, the Supreme Court has
> stated that post-revocation penalties are attributable to the original conviction, not the
> offenses that caused the revocation. *Johnson v. United States*, 529 U.S. 694, 700-01,
> 120 S. Ct. 1795, 1800-01, 146 L. Ed. 2d 727 (2000). Thus, the three criminal history
> points for his January 2008 three-year imprisonment sentence were attributable to his
> 2005 state fraudulent check conviction, even if the bank robbery was a basis for the
> revocation of Pruitt's state probation.

*Pruitt*, 344 Fed. App'x at 538.

In Petitioner's case, even assuming, *arguendo*, that the assessment of the two points for the firearm possession and the two points for the injunction/probation violation resulted in a "double counting," that "double counting" was not impermissible under the guidelines. *See, e.g., United States v. Wimbush*, 103 F.3d 968 (11th Cir. 1997) (prior convictions for burglary and involuntary manslaughter could be counted to increase base offense level and to determine criminal history points, despite claim of impermissible double counting); *United States v. Trupiano*, 11 F.3d 769 (8th Cir. 1993) (sentencing court's addition of three points to defendant's criminal history category for committing offense while on probation for another offense was not impermissible "double-counting").

## EVIDENTIARY HEARING

A court is not required to hold an evidentiary hearing where the record makes "manifest the lack of merit of a Section 2255 claim."[19] *United States v. Lagrone*, 727 F.2d 1037, 1038 (11th Cir.1984). This case warrants no evidentiary hearing because "it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief."[20] *Broadwater v. United States*, 292 F.3d 1302, 1303 (11th Cir. 2003).

Accordingly, it is **ORDERED AND ADJUDGED** that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (CV Dkt. 1) is DENIED. The clerk is directed to enter judgment against Petitioner and close this case.

---

[19] Generally, resolution of a claim of ineffective assistance of counsel alleging that counsel failed to file a notice of appeal after Petitioner requested that counsel do so requires an evidentiary hearing to make a credibility determination between a petitioner's specific allegation that he instructed counsel to file an appeal and counsel's contrary contention. *See Gomez-Diaz*, 433 F.3d at 792. *See also* Rule 8, Rules Governing Section 2255 Proceedings. Petitioner's case is distinguishable from *Gomez-Diaz* because Petitioner does not contest counsel's sworn statement, and the record does not show, that Petitioner instructed his counsel to file an appeal.

[20] Petitioner in his motion to vacate does not argue entitlement to, nor does he request, an evidentiary hearing.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Petitioner has not made the requisite showing in these circumstances. Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** in chambers this 23rd day of December, 2013.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Petitioner, *pro se*
Counsel of record